Good morning, Your Honor. Stephanie LaComber, the Federal Defenders of San Diego, on behalf of Mr. Becerril-Lopez. Do you have enough light over there? I'm sorry? Do you have enough light? Can you see? I can, Your Honor. Why don't we turn the lights on? Do we pay the bill this month? No lights? Right above you, there's spotlights. Oh, okay. You can see, huh? I can see, Your Honor. Thank you. They are on. They just shine straight through. Mr. Becerril is not present. He is currently in custody serving a sentence of 100 months for illegal entry after deportation. I wish to reserve a minute of my time for rebuttal, Your Honors. Sure. Your Honors, Mr. Becerril's judgment and sentence must be reversed because this Court's decision in United States v. Covina-Sandoval applies to the instant case. Now, in Covina-Sandoval, this Court held that the protections outlined in Apprendi v. New Jersey apply to the portion of Title VIII United States Code Section 1326B that permits the increase of the maximum prison sentence from 2 to 10 to 20 years subsequent if the defendant was deported subsequent to a prior conviction. Now, the application of Apprendi to that fact requires, in effect, that the deportation and the date on which it occurred must be treated as an offense element to justify increasing Mr. Becerril's exposure above 2 years in prison. Thus, the deportation and its date must be alleged in the indictment under United States v. Cotton, 535 U.S. 625-2002, and prove beyond a reasonable doubt to a jury under Booker. Now, because none of those criteria were met here, the indictment failed to charge those elements. This Court must remand in order that Mr. Becerril's sentence cannot exceed 2 years in custody and 1 year of supervised release. Mr. Becerril's pre-sentence report alleges that he ---- Kennedy, what about this Supreme Court decision in Almendarez-Torres that's stated in this Covian case that the judge may enhance the sentence under 1326b for a prior conviction even if the fact the conviction was not charged in the indictment submitted to the jury or proved beyond a reasonable doubt? However, Your Honor, in Covian ---- And the rest of the language there on that page. While Almendarez-Torres does apply to the fact of a prior conviction, this Court found in Covian-Sandoval that that exception does not apply equally to the fact of the date of a prior deportation. In fact, it specifically found that that was outside the scope of the Almendarez-Torres exception of a judicial fact-finding as to the fact of a prior conviction. Here, because the government failed to allege in the indictment, as required under Cotton, the date of the alleged deportation, we have no idea what date of deportation the grand jury relied on, nor what date the petit jury at trial relied on. The government at trial presented evidence of multiple ---- of documents, of immigration documents from multiple dates, an order to show cause, I believe, from 1992, an immigration order from 1995, and then a warrant of removal from 2005. Because we don't know which of these dates or that the government was able to prove beyond a reasonable doubt any one of these dates to the grand jury, because of the fault in the indictment, Mr. Besserell's sentence should not be allowed to exceed two years. Now, the government argues that Covian-Sandoval does not apply to the instant case because Mr. Besserell cannot meet his burden of raising a reasonable doubt that he was not deported after 1986 for four reasons. That there was no Apprendi error is the first. Now, this argument is clearly incorrect. First, the date of deportation was not contained in the indictment, as the Court can see on pages 3 and 4 of the excerpt of record. Second, the date of deportation was not found by a jury beyond a reasonable doubt, and that also is before the Court on pages 288 and 289 of the excerpt of record, where the jury's own verdict doesn't state any date of deportation that was found by the jury. And again, because the jury was presented with documents from multiple dates spanning over a decade of time, it's impossible to know what date, if any, the jury found for the date of deportation. Third, the date of deportation was never admitted by Mr. Besserell under oath. The second reason the government argues that Covian does not or argues that Covian doesn't control is that even assuming error under Covian, the government alleges that any error, any Covian error was invited. However, such error was not invited here because the date of deportation was not alleged in the indictment. Thus, Mr. Besserell had no notice that the government intended to seek a sentence beyond the two years of imprisonment that is prescribed under Section 1326a. The indictment, as alleged, gave Mr. Besserell ample notice that he would be subject to up to two years in custody. Because they did not allege a date of deportation in order to prove up that the enhancement required under 1326b, his sentence should be limited to two years. The government ---- There was the government at trial presented evidence of a warrant of removal in March on ---- in March of 2005. However, the A file that I reviewed as part of the evidence that the government presented had immigration documents dating back to removals from 1975. Because the ---- even because we don't have a grand jury transcript, we have no idea what documents were presented to the grand jury and what date of deportation, if any, the grand jury relied on in finding that Mr. Besserell could be charged with a violation of 1326. Then at trial, we have multiple immigration documents, a notice to appear or an order to show cause from 19 ---- from, I believe it was October 20, 1992. That's on the excerpt of record, pages 185 to 187. Did your client raise this objection at trial? Mr. Besserell didn't ---- Can we start with a yes or no? No. Mr. Besserell did not specifically object to the fact that a date of deportation was not alleged in the indictment because he was not under any notice that that was going to be an issue. Mr. Besserell does, I think, preserve his coviant objection in his pre-sentence report in objecting specifically to all law enforcement contacts and the recitation of underlying facts of his prior alleged convictions and arrests. Clearly, any immigration history is a law enforcement contact. Mr. Besserell meant to preserve his objections generally, his Apprendi objections as well as his Sixth Amendment objections, to all of the law enforcement documents that the government intended to use to calculate his criminal history at sentencing. Is that sufficient to avoid plain error review? Well, Your Honor, I ---- Can we start again with a yes or no? It would be Mr. Besserell's position that, yes, that should be sufficient to preserve Mr. Besserell's objection to under coviant Sandoval. Now ---- What's your best case for that proposition? Well, under ---- even under Cotton, Your Honor, where they dealt with forfeited error because the defendant did not officially object to ---- did not officially object to the error at trial, there are a number of ---- there's a four-step ---- well, three-step test under which this Court can review an error which was forfeited in order to determine whether or not the court has the discretion to act ---- is able to exercise discretion in correcting that error. First, that under Cotton that there was error, and clearly there was error here. The fact of the date of deportation was not alleged in the indictment, nor was it proved beyond a reasonable doubt or admitted by Mr. Besserell. Second, that that error was plain, and clearly here that error was plain. Covian-Sandoval says that a failure to ---- while it didn't reach the grand jury issue here, that it is an element, that the date of deportation is an element of Section 1326, and thus under Cotton should have been alleged in the indictment. Now, does this ---- does this now affect substantial rights of Mr. Besserell?  Here, Mr. ---- Your position at the moment, right now in front of this panel, is that this was an element of the offense? Yes, Your Honor. Covian-Sandoval did ---- this Court's decision in Covian-Sandoval did hold that the date of deportation is an element of the offense, the 1326, for purposes of being able to increase it under 1326b. Failure to allege that then limits the sentencing stat max to two years under 1326a. Was there a motion to dismiss at the close of evidence? There was a rule 29, Your Honor, motion to dismiss. And again, Mr. Besserell maintains that his objection generally on Apprendi to all of the facts of his prior law enforcement contacts and his objections generally to the facts being presented from the immigration documents should have been sufficient to preserve his objection here. Now ---- Let me ask you this. Was there in evidence information regarding two deportations which both occurred after the 1986 robbery conviction? There was evidence of ---- well, Your Honor, the government never presented sufficient immigration documents to support any ---- a deportation on any one of the dates of the three immigration documents that presented at trial. The first, the notice to appear in 1992, they did not have an immigration order or a warrant of deportation that went along with that particular date. Then the immigration order from 1995, they did not present on ---- Correct, Your Honor. There were ---- while there were documents, immigration documents presented by the government to prove up a deportation, there was ---- there were not enough immigration documents to prove up the date of any one deportation because the immigration documents presented came from multiple dates. And thus, there's no way to know whether the jury found any specific date of deportation when they made a jury finding that Mr. Besserill had, in fact, been deported. Again, the notice to appear, they did not have an immigration order or warrant from 1992 nor ---- Yes, Your Honor. You're beyond your time. Oh, I apologize, Your Honor. That's okay. Thank you. Good morning, Your Honors. May it please the Court. Mark Rady for the United States. Your Honors, Kogin-Sandoval does not compel the reversal of the sentence in this that Kogin-Sandoval was a case where actually the government prevailed on plain-error review. And it's the government's position in this case that we prevail on plain-error review as well. And in Kogin-Sandoval, and actually, I want to make one thing clear. We submitted a Rule 28J letter at the end of last week. In our ---- excuse me. In our briefs, we originally stated that the standard review was de novo. That was an error. And as we point out, this Court is not bound by an erroneous concession of the law by the government. When one looks to the actual documents and the record in this case, I noted in Defense Counsel's Rule 28J letter on Kogin-Sandoval, she asserts that she repeatedly objected about the relative sequence and the timing of the deportation to the 1986 robbery conviction. When you look at the documents, that's not borne out. When was this case tried? This case was tried in 2005, I believe. So before Kogin? Yes, before Kogin. So it wasn't the law? No. I think what the law was, actually, for a while, was in 2001, this Court held in United States v. Castillo Rivera that the ---- My question goes to your argument that somehow this objection wasn't raised or adequately displayed on the record. The trial defense counsel would have had to have been prescient, right, to predict what the circuit might do with this issue because Kogin-Sandoval didn't exist, right? Well, that's true. So why isn't a general objection to judge as opposed to jury fact sufficient? Because I think for ---- that's the nature of plain error view. Even in United States v. Ameline, it may seem inherently unfair, but that's just the way it's been for the last 20 or 30 years. Any time a new principle of law comes out, if an objection isn't made, that's just the way it is because we also want to make sure that defendants don't get a windfall here. But I believe that the reason this objection is ---- It's hard to describe a windfall as the proper application of authority that didn't exist at the time of trial. That happens all the time. That's not a windfall. Well, if Your Honor, for the last 10 years, these defendants in these cases have never been limited to a two-year statutory maximum. This is kind of a claim. In fact, at the time we thought our brief, it was the published law of this circuit that the date of removal did come within the Almand-Darves-Torres exception. So when the government acted in accordance with that by not putting the date of removal in the indictment, we've been doing that for years, and then suddenly, overnight, Kogin-Sandoval changes the law. I think in a way that it does provide an opportunity for windfall for defendants. And the government intend to seek more than a two-year sentence at the onset? Absolutely. Absolutely, Your Honor. And this defendant has a significant criminal history. It goes all the way back to 1977. Was the defendant, for his counsel, so advised? I think by the nature of the charge and the practice in our ---- That isn't my question. Was he told? Well, he didn't plead guilty, so he wasn't told. Well, don't you ---- Were you the trial lawyer? No, I wasn't the trial lawyer. Well, you don't know what the discussion was. That's true, too, but ---- They had to talk to each other about it. I assume they did, and that would be off the record, Your Honor. I have to make my arguments from what's in the record. But I think the important thing to keep in mind here, and I think this goes to Judge Kogin's concern, I don't think it is enough just to say, oh, this sentence is, you know ---- What was so difficult about proving up the date of removal? I don't think it was. And actually, I'm glad you brought that up, because I think defense counsel has painted a picture here that there were all kinds of dates thrown out there. It actually was very clear, Your Honor. The robbery conviction at issue here is 1986. Three separate documents were introduced at trial. These are standard documents that are always used to prove a deportation. The first one was the notice to appear which initiates the removal proceedings, and that was dated 1992. The second one was the order of the immigration judge actually finding this defendant removable. That's dated April 26, 1995. And, in fact, it's based on a record of a deportation proceeding that the defendant himself submitted in the district court. So I understand your argument. It is that the government did offer documentation to establish the date of removal, correct? Yes. Several different documents. Correct. Exactly. Let me finish. You may even find this question helps you. Okay. The only proof that was before the jury in the form of documentary evidence was that the removals were after the robbery conviction. Absolutely. And the indictment charged found following deportation. Correct. Okay. All right. I understand. Okay. I think it was Government's Exhibit 4 is the actual warrant of removal. And that's the one in the custodian of records testified on March 15, 2005, this defendant was removed afoot. I don't know if there's ambiguity in that. Defense counsel is apparently suggesting there is. I mean, there's a warrant of removal. The record shows it was served and picked the person up and took them across the border. Does it show all that? Yes, it does, Your Honor. That's an evidence that he was picked up, transported across the border, wherever, you know. Correct. It's Government's Exhibit 4. And I know that it's in the record. It's not part of the excerpts of record, unfortunately, but it is in the testimony. And Marco Perez was the custodian of records. He testified about that document. And he specifically testified to the date that was reflected on it, which was March 15, 2005. And you can see that in excerpt of record, pages 190 to 194, you'll find that testimony. But what did he say? He basically said the prosecutor asked him, what is this? This is a warrant of removal. What does it show? It indicates the place, the manner of removal. Read it. Read it to us. It says at the top, to be completed by service officer executing the warrant, name of alien being removed, Becero Lopez, Raul, port, date, and manner of removal. It says BRO, which was testified at trials Brownsville and Texas, port of entry, 3-15-05, a foot. And then it has the signature of the alien. And it also. A foot means basically that he was sent on foot. He wasn't taken by vehicle or airplane. And this was Government's Exhibit 4, which was properly admitted into evidence, and that was before the jury. And so it's the Government's contention on plain air review when you look at that evidence, and you also look at the failure of the defendant. When she talks about what she objected to, that's all the criminal history part of the PSR. The PSR specifically has a section on page 7 called Immigration History, and there was never any objection to the dates listed in that section, most of which post-date 1986. And in Covey and Sandoval, that was exactly a critical factor that this Court cited in finding no prejudice. And just the last thing I'd say on this issue, Your Honor, as we pointed out in the last paragraph of our Rule 28J letter, this defendant knew about this removal because she moved pretrial, his lawyer moved pretrial to actually challenge it. And I don't see how you can challenge something without assuming its existence. And, in fact, in excerpts of record pages 54 through 65, it was the defense that submitted the transcript of that April 1995 removal hearing. And if the whole point on plain error under that last discretionary factor which says even if this Court finds error, it shouldn't reverse, if it does no damage to the integrity of judicial proceedings, I don't see how in this record this Court could find any damage to the integrity of judicial proceedings by affirming. And actually with my remaining time, I just wanted to bring up two points that I thought could use clarification, even though they weren't discussed earlier. One of them has to do with the defendant's motion to dismiss the prior removal. One of the grounds of prejudice that she refers to is the immigration judge's failure to advise the defendant of preconclusion voluntary departure. And she cites this section as 8 U.S.C. 1252b. We would argue by her own authority, she submits a case, Contreras-Aragon. It specifically states that that is actually pre-initiation voluntary departure. And it says if that voluntary departure is going to happen, it happens before removal proceeding is even initiated. Here, the removal proceeding was initiated. And, in fact, Contreras-Aragon, just quote this, at 852 F. 2nd, at page 1094, it's a short sentence that says, an application for voluntary departure under this section must be made prior to the commencement of the deportation hearing, and no appeal lies from the denial of the section. And so I think what that basically tells this Court, once those removal proceedings were initiated in April of 1995, it was too late for that 1252b form of voluntary departure. And the Ninth Circuit itself stated that there's no appeal from the denial. If that's the case, then the immigration judge could not have advised this defendant of that relief, and it can't be grounds for prejudice. Thank you. Thank you, Your Honor. We'll give you one minute. Thank you, Your Honor. Briefly, I just wanted to respond to the government's contention that Mr. Bessaril is somehow claiming the nonexistence of a post-1986 removal. That's absolutely not what Mr. Bessaril is maintaining. He's maintaining that the government did not prove beyond a reasonable doubt the date of a post-1986 removal for the purposes of the enhancement under 1326. It's read as a document. Yes. And, Your Honor we're, you know, the last word was a foot, which means it walked across the border. And while that document may have been dated 2005, the immigration order on which the government alleges it was based occurred 10 years prior. Now, there's nothing to show that that document necessarily was linked to the immigration judge's order from 1995. It's Mr. Bessaril's position that if they were going to use the 2005 deportation warn of deportation, they needed to show an immigration finding of deportability in 2005 as well. Now, and the government now contends that they can correct the deficiency in the indictment by relying on facts presented at trial, and that's absolutely not proper here because Mr. Bessaril is. It's not exactly a deficiency because that allegation wasn't required. But listen, we understand your argument fully. Okay. Thank you, Your Honor.
judges: Pregerson, Hall, Hawkins